May it please the court. Gary Terry put before the district court powerful evidence of a pervasive pattern of severe child abuse that defined his early years while the respondents proffered nothing. On the basis of that record, the district court readily identified the underlying factual dispute between the parties why evidence of Terry's child abuse never made it before his jury but then erred when it proceeded to draw a series of inferences in the respondents' favor, discounted Terry's proffered evidence, and ultimately granted summary judgment to the respondents. This was error because at the summary judgment stage, Terry's burden was only to prove the existence of material factual disputes and he carried that burden. In this case, there are at least three underlying factual disputes at issue. First, whether trial counsel presented all the evidence of child abuse of which they were aware. Second, whether Terry's history expert withheld evidence of child abuse from trial counsel. And third, whether Terry's trial counsel ignored or otherwise missed red flags for child abuse in their own file. These three issues are material because they go to the core of Terry's underlying claim that his trial counsel were ineffective. Any reasonably competent attorney would have reviewed the mitigation investigator's notes, would have recognized and understood the significance of the what if. Can I ask a question? Judge Diaz here. Judge Diaz, you were in the middle of asking a question when we got cut off, so would you resume and ask that question? Certainly. It may have been that Ms. Friedman didn't like the looks of the question and cut me off. I hope that wasn't the case. Ms. Friedman, are you there? Can you hear me okay? Yes, your honor, and I promise you that's what happened. I'm sure that's not the case. So the question I had was you mentioned that, or at least you indicated that you, that counsel did not review the investigator's notes, and I'm wondering where that is in the record because my recollection is that we don't know one way or the other whether or not the lawyer reviewed the notes. Now that may not be necessarily a good thing for counsel, but can you answer that question? Yes, your honor. The magistrate made a finding unobjected to page 347 of the joint appendix that Massey, the mitigation investigator's notes, were in trial counsel's file, and the district court also made a finding that Terry did not present any evidence that trial counsel knew more information than what was in trial counsel's file, but of course what was in Massey's notes included evidence of child abuse that never got before the jury. And so the only reasonable inference the district court could have drawn from that, from those two sets of notes, is that the trial counsel did not review the notes in Massey's file, in their own file, did not review Massey's notes. And the things that Massey's notes contained were things along the lines of Terry's father beating him on a regular basis with a belt, beating him until he was bleeding, that he beat all of the children that way, and that when Terry's mother attempted to intervene, that Terry's mother was also beaten. And so on the basis of those, you know, that the way the record comes before the district court, our view is that there was only one reasonable inference that the district court could draw from that set of things, which is that trial counsel did not review Massey's notes at all. Can I follow up on that? It's pretty good. So that's one inference, I suppose, but another inference is that the district court did not review the notes and the record evidence, and having understood from their expert vocal saying that she, he or she, I forget who it was, he or she thought that this, that the theory of the case could be better presented as one of neglect as opposed to abuse, and that that should be the focus of the presentation. The presentation being that this was a family down, hard in its luck, that it did the best it could. It was a scrabble state of affairs, and that there was some abuse. I suppose maybe that would have been a misrepresentation given the evidence that you uncovered, but that the focus properly should be on the fact that the family did the best that it could in order to engender some empathy or sympathy on the part of the jury. And why aren't we entitled to make that inference? A couple of reasons, Your Honor. Fullwood's affidavit indicates that she intended to present all of the evidence of child abuse that she could, and so that raises the inference again that she did not review her own notes, what was in Massey's notes. But also, this is not a case where trial counsel described any strategic reason for not presenting this evidence, and in this case, there's no reason why they wouldn't. There's no double edge to this evidence. It was all mitigating, and it was underlying strategy, and consistent with what Vogel's saying did testify to. Isn't there a pretty evident reason not to present the evidence of child abuse? And I believe Judge Diaz touched on that, but they were trying to present through testimony a picture of how the family members felt when they were to be executed, and they actually put those family members, at least the mother, on the stand. And there would be a definite tension between the remorse that the family members felt over the possibility of an execution and child abuse, which indicates not an empathy with the petitioner here, but a willingness to abuse them. I mean, those two lines of testimony seem, if not outright incompatible, at least to present a tension. That might be the case, Your Honor, but that is not what trial counsel said. Trial counsel indicated that they intended to present evidence of child abuse, and they did not describe a strategic reason for not doing so. And beyond that, Vogel's saying did testify about the family being neglectful, and the jury heard some incidental descriptions of abuse that Terry suffered. So the idea that trial counsel's presentation was inconsistent somehow with the evidence that federal habeas counsel uncovered, I think is not supported by the record. And beyond that, I'm not sure that counsel has to articulate a particular strategy and say, here, for purposes of later Strickland review, I'm pursuing this strategy for this reason, if it's perfectly evident what the strategic reason was. And to follow up on that a little bit more, isn't there some tension between child abuse and an abnormal brain development and an abnormal brain condition? And you can believe one or the other, but it would be somewhat more difficult to believe both. In other words, there was an attempt to prioritize an explanation for what he did. And what he did, they were trying to present as a product of an abnormal brain condition. That's correct, Your Honor. But I think that our position on this is that the two forms of mitigation were actually consistent with each other and reinforced each other. While the brain damage evidence is mitigating on its own, and the child abuse evidence is mitigating on its own, the two kinds of mitigation evidence together would have presented an even stronger case, because as Dr. Maddox's affidavit in federal court indicated, there is evidence that child abuse and severe trauma as a child can actually contribute to brain development. Ms. Friedman, let me ask you a question, if I could. I'd like you to give us a conceptual framework here. You're asking for a Martinez hearing, is that correct? Yes, Your Honor. Okay. Could you give us then the standard of review that we need to apply in considering your arguments? And specifically, do we need to even consider prejudice in evaluating the evidence for a Martinez hearing? So I think on the way that this case arrived at the Fourth Circuit was on a grant of summary judgment to the respondents. And so we asked in the district court for an evidentiary hearing, but before we had an opportunity to even develop additional facts, the district court cut that off and granted summary judgment to the respondents. So what we are asking this court for is to review this record under the familiar summary judgment standards, to review as a matter of law, to review de novo, the district court's conclusions of law, to vacate the district court opinion, and then remand for the district court in the first instance to make the determination under the Townsend standard of whether we should be entitled- One second, though. I don't mean to cut you off, but we said in the Sigmund case, we said, when you're seeking an evidentiary hearing in a Martinez context, we review a district court's decision denying a habeas petition or an evidentiary hearing for abuse of discretion. How does that factor into it? So I think that the way the court should approach this case is sort of to address the first question that the district court resolved, which was the question of whether or not summary judgment is proper. The district court denied us an evidentiary hearing because it concluded that on the basis of this record, we had not made out a substantial entitlement, a substantial claim that trial counsel were ineffective and that therefore we were not entitled to an evidentiary hearing. So I think that's the standard articulated in Sigmund is completely consistent with what we're asking for which is just that the court review this record under the summary judgment standard and then vacate the district court's opinion and remand for the district court to determine whether in its discretion it ought to grant an evidentiary hearing. And the Townsend standard is what would apply to the district court's assessment of whether we are entitled to an evidentiary hearing. And in this case, we feel that we've met that standard. And that is whether we have alleged facts, which if taken as true, would entitle us to relief. And so our view is that on remand, it would be appropriate for the district court to grant an evidentiary hearing. But if we are reviewing under an abuse of discretion standard, and if we are reviewing what seems to be a standard Strickland claim, we can, of course, affirm on any judgment which is apparent from the record. And I don't see, you know, there was a long debate over whether the standard for prejudice should be a reasonable possibility, or a reasonable probability. And of course, the Supreme Court after that debate, was cooking for a while, and decided on the reasonable probability standard, which should should mean something. And I don't know, the Supreme Court has also instructed us to turn first, if we could, to the prejudice prong of the Strickland inquiry. And I think that it's hard to blame the lawyer here for the fact that he had a very, very difficult case, brutally raping and beating her to death with trauma wounds on her head. And you have a confession here, so that when all of these things, and plus the forensic evidence, all of these things leave, there's no question of innocence here. And above and beyond that, what concerned me from this are really unusual in these kinds of cases. And you have this letter by Mr. Terry saying, quote, it felt so good to hurt people, unquote. And then on top of all that, you have abuse of girlfriends, and a terrible prison record, an extensive criminal history, and before the confession, an utterly implausible standard of what happened. And so you find that case goes to the jury, and they come back within an hour and with a verdict. And the question that I asked myself is, I think it's wrong to blame attorneys for the fact that they have an almost impossible case, given the absence of remorse and the brutality of the crime, and the beating of the victim, and extensive criminal history, and the misbehavior in jail, and all the rest. I don't think the best lawyer in the world could have turned this around. Sometimes it's not the lawyer's fault, and we blame lawyers for the fact that these facts of the crime and afterwards are so dismal. So I don't see how we get around that on a prejudice prong. So I think the court could look to a lot of the Supreme Court's cases that address Strickland claims. So for example, in Rompilla, the court was confronted with a situation where the client had basically committed a nearly identical crime just recently before the murder that put him on death row. And the court nevertheless granted relief in that case, because the court indicated that the role that the court is supposed to play when it assesses prejudice is to rewrite all of the evidence, all of the evidence that was presented, and also the unprecedented mitigation evidence, and consider that evidence as a whole. I see that my time has expired there. Are you there, Ms. Friedman? Yes, Judge, yes. Sorry. Before you sit down, I wanted to go back to Mrs. Vogelsang and sort of her expert review of this case. The record shows that she did, in fact, talk to a number of these family members and knew at least about some of the abuse that Terry had suffered. But she made a determination based on her expertise that the way to go in this case would be to not focus on the abuse so much, as opposed to focusing on the neglect. And so the question I have is, of course, you say that the lawyers really didn't make a considered judgment one way or the other, but silence I don't think by itself suggests a lack of a strategy or a lack of consideration of a strategy. So assuming for the moment that the lawyers made that considered judgment, does that amount to ineffective assistance? I know you say that these are not inconsistent, but there is, I think, an inherent inconsistency in those theories. And if the lawyer had made that considered judgment at the consulting, his expert, could he be faulted for that? So I think this case, Your Honor, is very similar to, if not stronger than what happened in the second Winston case. In that case, the attorneys gave records relating to mitigation evidence to their expert, to their mental health expert, Nelson. And then they relied on what Nelson did with those school records without reviewing them themselves. And so I think to a significant extent, this is similar in the sense that trial counsel here had before them and available to them evidence of child abuse. Even if what they did was give that evidence to their experts and say, tell us what to present, I think Winston too stands for the proposition that that would be ineffective because trial counsel owes their client a duty of effective representation and their experts do not. Thank you. Isn't always second guessing a bit here because Ms. Volgasong, the expert, interviewed all kinds of family members. There were extensive interviews. And it seems very unlikely that having an expert interview all those people that counsel would have simply ignored them. What seems far more plausible is that the interviews just came up, you know, it was a dry well and that the evidence of child abuse simply wasn't compelling enough to go with in light of the possible inconsistencies with other parts of the strategy that the evidence of child abuse here that a lot of it just didn't really differ from what unfortunately goes on in a number of households. And the expert, Ms. Volgasong, apparently the experts in these areas review a wide range of cases and there was no lack of diligence on the part of the expert because there were extensive interviews. But at the end of the day, the case for a winning strategy with child abuse didn't add up. And, you know, we might disagree with that, but we're told not to second guess trial counsel's strategic judgments on those things. It's all too easy to say, well, the jury came back with an adverse verdict. Must have been the lawyer's fault. But this was just a tough, tough case to win. That's what concerns me is we're second guessing the attorney after an adverse verdict. And in a case where it wasn't as if the child abuse evidence wasn't examined, which is the case with a lot of these situations, you say, well, how could you make a judgment if you didn't go down that road? And some of the cases that have been overturned have been situations where a particular area wasn't even examined. But here it was examined extensively and lawyers made the decision not to lead with it. I mean, there was some evidence of child abuse, but they made a decision after extensive examination by the expert not to lead with it. And I just am concerned that we are faulting members of the legal profession when they take on a tough case that, frankly, I think very, very few lawyers could have prevailed on. That's my concern. What's your response to that? Very briefly, Judge Wilkinson, I would just say that in this case, I think the record really does support the inference that it was counsel's intention to put forward as much evidence of child abuse as they could uncover. That's what Vogel-Sang said in her affidavit, and that's what the record before the district court indicated. And so on the basis of this record, it was error for the district court to draw inferences other than those that are favorable to Terry. Thank you. Well, we thank you, Ms. Freeman. We appreciate it. Mr. Salter, are you prepared to give us your view of it? Yes, sir, your honor, I am. Good that Terry cannot meet his burden for a hearing under Martinez. And the district court's ruling must be affirmed because, like the situation before this court in Owens, like the situation in Sigmund, and like the situation in Moore, counsel made a reasonably thorough investigation for all mitigating evidence, including evidence of physical abuse. Now, at the time of the PCR hearing, both attorneys indicated that the primary focus of mitigation in the case was going to be brain damage because brain damage offered a potential explanation for Terry's violent acts that he committed throughout his life. They put up three witnesses who testified extensively to their brain damage, but they didn't overlook the importance of presenting background information about his family and including physical abuse. Of course, the present case kind of reflects the Supreme Court's admonition in Strickland that there are countless ways to provide effective assistance to counsel and that no two attorneys would try a case in the same manner. The record reflects Ms. Fuller was obviously aware of abuse because she presented evidence of abuse. However, again, the focus at the time of the trial was on how did that abuse impact the brain damage to which the other experts testified. Now, Ms. Vogel's saying... Can I ask a question? You just made the point that trial counsel presented some evidence of abuse, and what Ms. Friedman is suggesting is that there just doesn't seem to be any logical reason for sort of scratch the surface of that area for the counsel not to have presented the evidence of abuse that was in the file. Now, it's come to light apparently that there's much more extensive evidence of that abuse, and of course, that hasn't been tested in the crucible of the hearing, and that may or may not pan out, but it's clear, isn't it, that there was much more evidence of abuse that either the lawyer or the experts knew about that never made its way into this record, and so I'm sort of puzzled as to why, having at least taken a glancing blow at the abuse evidence, why a lawyer would not have simply presented all the evidence that he or she had. Well, your honor, Ms. Vogel's saying testified at the time of trial in the sense of proceeding that she wasn't trying to imply that the family violence in this case was the kind of pervasive violence you find in a lot of homes where battering takes place, only there was some violence within the home that caused Terry to emit signs and cues that something was terribly wrong from an early age, and that's page 784. Now, with respect to counsel's affidavit that was submitted in these any strategic decision to limit the mitigation testimony of Gary's family members or to avoid presentation of evidence that he had suffered significant abuse as a child, it was my intent to present all the evidence of that nature that we could, and all that I was aware of was presented. Now, that's a recollection some 12 years, some, I'm sorry, 15 years after the hearing itself. At the time of trial, what we have is evidence through Ms. Vogel saying that Terry was the run of the litter. His brothers beat him up a lot, and there wasn't a lot of intervention. His parents also had two of his brothers arrested for beating him up as a teenager. His father broke Terry's collarbone when the father intervened in a fight between Terry and one of his brothers, and two of his brothers had lost custody of their children. Both children had been removed by DSS because of cruelty, and both men had been abusive of their spouses. Additionally, Patricia Terry testified that Terry began fighting with his brothers at 12 or 13. They fought a lot. Terry began having run-ins with his father at 12 or 13, and she recounted the incident in which the father broke Terry's collarbone with the board. I submit to you that is evidence of significant abuse, but it did not prevent counsel from arguing simply for the Terry family in her closing, which she did on pages 96 to 97 of the joint appendix. She argued in closing that the jury should think about Terry's family, that they were good, decent people who loved him and tried to provide for him, but they simply could not, and it was not their fault he ended up the way he is. This dovetailed into the argument. Excuse me, Mr. Salter. I have a question, please. I'm having difficulty here in a case involving a death sentence, why the state would be opposing an evidentiary hearing under Martinez. There was no ineffective assistance of counsel claim on the failure to present the mitigation evidence. That was not raised at the PCR hearing, was it? No, ma'am. No claims related to the penalty phase were raised. Exactly, and so why wouldn't we want to have, before allowing this execution to go forward, why wouldn't we want to have an evidentiary hearing where counsel could explain these things? It seems to me that Martinez here has to be the guiding principle, and if the petitioner makes a strong showing, he doesn't have to carry the day under Strickland in order to get the evidence. In fact, haven't we analogized it to a certificate of appealability, the showing that needs to be made under a Martinez hearing? What is the downside to allowing an evidentiary hearing for the first time on this issue and have a fully developed record before the state proceeds to execute this man? Your Honor, I would submit to you that this would be an unnecessary delay in the proceedings. The reason it wasn't raised in post-conviction relief is because counsel made a reasonably thorough investigation for mitigation evidence, and they primarily, with respect to the abuse, would have been, all right, this is how Terry acted out, and this can be explained by brain damage, but they did present significant evidence of physical abuse. The abuse that they've uncovered now, while more pervasive, which conflicts, obviously, with Ms. Gugglesang's trial testimony, it's not as extensive. There's nothing that is of the same category of having two of your own children arrested for beating your son up or the father breaking his collarbone with a board. Particularly, in this case, in particular, Judge Wilkinson hit on this earlier, the prejudice prong under Strickland, there's no way this could ever be surmounted. Mr. Salter, what do you say on the prejudice prong of the claim? Well, Your Honor, I say that if we had followed the tactic that they now suggest should have been done, we would have lost the ability to argue sympathy for the family because there's no belief that Mr. Terry was. Also, you have, Your Honor, hit on a lot of this incredibly horrible, horrible crime where literally- We have to consider the prejudice, do we not? Yes, sir. In fact, this was made clear most recently in Owens where you have to be able to have some evidence of some merit to a claim of prejudice as well as deficiency of merit. That's right, Mr. Salter, but under Owen and under Sigmund, you don't have to make the case. In other words, you don't have to prove the prejudice prong. You just have to make a swing, don't you? Yes, Your Honor. What I'm trying to say is you cannot do that given the facts in this trial. You have Gary Terry who's, he had a significant, in addition to the facts surrounding the crime itself, he has an incredibly extensive history of theft, violent misconduct outside of prison misconduct, a lot of misconduct- But all that was before the jury in the sentencing phase of the trial, was it not? Yes, sir, Your Honor. I mean, the record in jail was, that was before the jury. The past abuse of girlfriends was before the jury. The lack of remorse was before the jury. In other words, when you look at prejudice, you have to go on what's before the jury and you can't go outside the record on that kind of things. But the things that I was mentioning about the absence of remorse and the misbehavior in jail and the extensive criminal history and the comments about feeling so good to hurt people, all of that was before the jury, was it not? Yes, sir, Your Honor. And this is also, this is Judge Diaz, but what was not before the jury was this newfound evidence of horrific abuse. And I get the point that you're making that there was a good bit of evidence, I don't want to quantify it, but at least some evidence of abuse in the record as it now exists. But if you read these affidavits, and I don't want to go through the whole thing because we could be here all day, I mean, it's just some horrific stuff that the family now alleges occurred to Terry and to others in that family. And getting back to Judge Keenan's question, I mean, we have to assume in order for you to avoid an evidentiary hearing, I guess we have to assume that all of that is correct, that all that evidence is in fact accurate and true, and that the lawyers simply didn't find it for whatever reason or didn't focus on it. And if we accept it as being true, then we have to assess whether or not there's some at least reasonable probability that one juror, one juror, because that's all it would take, would have opted for life instead of death. And then you've got the testimony of the affidavit of the psychiatric expert who suggests that had she known about that evidence that it would have certainly made for a stronger case with respect to the origins of the brain damage and would have presented a much more compelling case in Terry's situation. So given all of that, and again, getting back to Judge Keenan's question, why wouldn't we want to have an evidentiary hearing on all of this to sort it out? Yeah, I don't believe it could meet their burden. I mean, with respect to counsel's failure to present a lot of this information, this goes back to the deficiency prompt. I guess let me back up, Mr. Salter. So, and maybe I'm answering my own question, but the district court judge in this case and the magistrate judge, didn't they accept all of this evidence as true and for purposes of a summary judgment motion on the prejudice prong and ultimately concluded that Terry couldn't show any prejudice? So let's assume, accept that. I mean, how do we gauge that? I mean, what are we supposed to do with that finding on appeal? Well, I think that, again, I think if we look at the record, particularly the record in the sentencing proceeding, it is clear that they don't meet their burden of proof under either prong because Vogelstein's sentencing case testimony is that she's a psychotherapist who, in most of her practice, is an experienced in family systems and trauma and neurological problems and medical conditions. Now, it was objectively reasonable for trial counsel to rely upon her in determining what evidence was necessary to present to the jury in terms of being able to meet the findings that Ms. Vogelstein made as well as that evidence, which was supportive finding of brain damage. And contrary to my colleague's assessment, the district court did not misapply the substantiality prong. The district court accepted the new evidence as true but found that Terry had not met his burden of showing a substantial claim under Martinez because there was no evidence of either deficient performance or prejudice under Strickland. For instance, Vogelstein admits in paragraph 7 of her affidavit, which is on page 79, that she could recall almost nothing about the case. Also, her testimony is inconsistent with subsequent 15 years later affirmance in 2012 as to the degree of severity of the physical abuse. Based on that and trial counsel's affidavit, the district court found that her speculation as to what had occurred had not overcome the strong presumption of reasonable performance under Strickland. To challenge my colleague to the district court's finding that counsel was not aware of the information in Ms. Madison's notes, we submit that the respondent would be entitled to summary judgment under either the district court's finding or that of the magistrate judge. If, in fact, the information in Ms. Madison's notes was presented to counsel, then it's obvious that counsel made a reasonable strategic decision in order to present the information that she thought was relevant to supporting the findings that were necessary. The fact that she may not specifically remember that doesn't overcome the strong presumption of reasonable performance. That's clear under Burke v. Titlow, where the United States Supreme Court reversed the Sixth Circuit for finding that the absence of evidence is indicative of deficient performance. Excuse me, Mr. Salter, not a question for you. Wouldn't an evidentiary hearing give the district court an opportunity to make specific findings regarding Vogelson's testimony that she had uncovered specific evidence of abuse at trial and the only reason she wouldn't have presented that evidence would be if trial counsel had not told her to do so? Wouldn't an evidentiary hearing give the district court an opportunity to weigh this rather than to go on just these affidavits? No, Your Honor, because he's already made a finding that her speculation is inconsistent with what she testified to at trial and it's inconsistent with her affirmation that she doesn't recall anything about the case. So that's part of the problem. And again, there's absolutely no prejudice. And one of the things that has not been touched upon in terms of the evidence and aggravation is the evidence that Terry once and evidence that he stabbed a prostitute in the neck. Now, South Carolina is not a weighing state. Brother, as long as there's a statutory aggravating circumstance in place, we consider all the evidence in aggravation, not just the evidence that would support statutory aggravating circumstance, and you balance that against the evidence of mitigation. And at this point, it would be evidence of mitigation at trial and evidence in mitigation that was proffered in habeas. We submit that when you do that, there's no reasonable probability of a different result. It just can't be. Mr. Salter, I don't think we can proceed on the grounds that there was no evidence of child abuse brought forward here. As I understood it, the jury did hear evidence that Mr. Terry had had a difficult childhood and that his father viciously beat him. That evidence was before the jury, was it not? Yes, sir, your honor. Particularly the incident in which his father broke his collarbone with the Yes, sir, your honor. I mean, it's not as if childhood abuse was not investigated, it was. And it's not as if child abuse wasn't presented, because it was, including the most poignant evidence of child abuse, which was his father viciously beat him. So child abuse was investigated, child abuse was presented to the jury. It's not as if they were left unaware of it. That's part of the difficulty. And then the district court made a point that if all this evidence wasn't communicated to counsel, further evidence, that's not the lawyer's fault. The point is that the lawyer hired an expert, and the expert went about interviewing, it seems to me, everyone in the vicinity. And there was some use made of it. And the reason to stress the abnormal brain damage is that it bears a much more direct connection to the commission of the crime. Child abuse is a much more diffuse and indirect connector. But an abnormal brain condition is a much more direct and powerful explanation for why this individual acted the way he did. So I can see a good reason for stressing that. As I say again, he did not neglect the other, he didn't neglect to investigate it, and he didn't neglect to present it. I mean, you've got a very, you know, a very, very good trial judge here who is, you know, not at all bent on capital punishment. And it seemed to me that he did a really fine job with it, and that counsel presented some really good points. But, you know, sometimes the greatest wizard in the world can't spin a successful case out of dismal facts. That's the problem here. It's not the problem is not counsel, the problem are the facts of the crime and the behavior thereafter. That's the problem. Yes, sir. I see I'm out of time. All right. Well, we will hear from Miss Freeman because she has some time in rebuttal. And I'll ask if any of my colleagues have further questions of you, Mr. Salter, I'd like to give them time to answer. Judge Keenan? No, thanks. Judge Diaz? I don't. Thank you. Okay. Miss Freeman, let's hear from you in rebuttal. Thank you, Judge Wilkinson. I just wanted to pick up on the question of prejudice. So in the Supreme Court's most recent pronouncement on this issue, Andrus versus Texas, the facts of that case involved two murders. And a number of the Supreme Court's recent decisions on prejudice have involved highly aggravated facts. And the Supreme Court has reiterated that even when there is a lot of evidence and aggravation, the court's responsibility when it comes to assessing prejudice is to look at the full scope of the mitigation evidence that was unpresented together with the evidence that was presented. And in this case, doing that, I think, highlights how Terry was, in fact, prejudiced by his trial counsel's failures. What the jury heard in his case... Miss Freeman, can I... I'm sorry, can I... Miss Freeman, Judge Diaz, but didn't the district court and magistrate judge do just that and concluded that Terry couldn't show prejudice? So I think the district court's prejudice assessment is actually... it's kind of unclear to me what the district court did with prejudice. I realize that the R&R does detail a substantial amount of evidence and aggravation, but the conclusion on prejudice is one sentence long. And so it doesn't appear that the district court really fully grappled with this issue. But beyond that... I thought the district court adopted the findings of the R&R by and large, as well as the conclusions. And as you point out, candidly so, the magistrate judge went into excruciating detail on the aggravation evidence in this case and weighed it against the found evidence of abuse and the evidence and mitigation generally and concluded that Terry couldn't make a showing of prejudice. So I guess two questions. How are we supposed to assess that? What standard are we having to cause an appellate court to overturn that finding? So again, at the summary judgment stage, the district court's not in a position to make findings as to disputed material factual questions. Well, no, no, no, no. I don't think you're... I thought that the court assumed the legitimacy of the evidence and assumed ineffective assistance of counsel and went straight to the prejudice prong. And so at that point, we're past any disputes of material fact. We're engaged in weighing of the aggravating evidence versus the newfound evidence and mitigation, as well as the evidence in the record. And so the district court and magistrate judge made a conclusion that it didn't matter whether this evidence would come in. The result wouldn't be any different. So how... Well, my question to you is, how are we supposed to assess that conclusion, finding whatever you want to call it, on appeal? So again, Strickland itself emphasized that prejudice is still a mixed question of fact and law. And the underlying factual premise of Terry's assertion that he was prejudiced hinges on not just the specific instances that the magistrate sort of broke apart and analyzed one by one, but on the full story that the jury didn't hear. So what Terry's jury heard was that his family was poor and they were hardworking, and they did what they could and came home tired, but they still loved him. What the jury didn't hear was an accurate portrayal of what Terry's home life was actually like. Terry grew up in an environment where his father beat the children daily using his fists, using a belt. And that was before the jury, was it not, Ms. Freeman, that his father viciously beat him? You can read it right there in the record. That evidence was not Judge Wilkinson. The jury heard about the isolated instance when Terry's father broke his collarbone. But again, that testimony came from Terry's mother who minimized the abuse. And the fact that the jury heard about these isolated instances invited them to treat those instances of abuse as though they were the only instances in Terry's life. I see that my time has expired, Your Honor. All right. Judge Keenan, do you have any further questions of Ms. Freeman? No, thank you. Judge Diaz, do you have any further questions? I do not. Thank you very much. All right. Ms. Freeman and Mr. Salter, I want to thank you both for your able arguments in this case. And as we've said many times before, it's a matter of regret that we can't come down and shake your hands. And thank you for the services to our court. But the fact that we are operating remotely doesn't mean that our appreciation for your help is one bit less. So thanks to you both. And we'll now adjourn court for the day. Thank you. This honorable court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Barbara Milano Keenan, Albert Diaz